IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMSC-024

Filing Date: June 2, 2010

Docket No. 32,337

STEPHANIE N. CHARLEY and
WILMA CHARLEY,

      Plaintiffs-Appellees,

v.

KERBY JOHNSON,

      Defendant-Appellant,

and

DEBBIE HOLMES, San Juan County Clerk,

      Real Party in Interest.

**ORIGINAL PROCEEDING**
**Grant L. Foutz, District Judge**

Long, Pound & Komer, P.A.
Mark Travis Baker
Little V. West
Santa Fe, NM

for Appellant

Fortner & Dalley, L.L.C.
Jackie L. Fortner
Farmington, NM

for Appellees

Office of the County Attorney
Douglas A. Echols
Aztec, NM

1

for Real Party in Interest

**OPINION**

**PER CURIAM.**

**{1}** This election challenge case presents us with the opportunity to discuss the intent and importance of our recent amendments to Rule 1-096 NMRA, the civil procedure rule governing district court actions to challenge nominating petitions. The district court ruled in favor of Plaintiffs, who challenged the sufficiency and validity of Kerby Johnson's nominating petitions for magistrate court judge in San Juan County. The court ordered the county clerk to not place Johnson's name on the ballot. Johnson then appealed to this Court. After hearing oral argument, we ruled from the bench in Johnson's favor and ordered that he be placed on the ballot for the upcoming Democratic primary election. We now issue this opinion to provide guidance for future actions challenging nominating petitions.

**FACTUAL AND PROCEDURAL BACKGROUND**

**{2}** Johnson filed a declaration of candidacy for the position of magistrate judge in Division 4 of the San Juan County magistrate district. Along with his declaration of candidacy, Johnson filed nominating petitions in support of his candidacy, which contained 166 signatures from individuals ostensibly qualified to vote for Johnson in the upcoming Democratic primary election. Although Johnson's declaration of candidacy clearly stated that he was running for the position of San Juan County magistrate judge in Division 4, his nominating petitions did not advise those signing the petitions that Johnson was seeking the Division 4 judgeship, but instead only stated that he was running for the position of magistrate judge in San Juan County.

**{3}** Candidates for the Democratic nomination to the Division 4 magistrate judgeship in San Juan County must submit nominating petitions containing signatures equal to at least three percent of the vote cast in Division 4 for all the Democratic candidates for Governor in the last primary election that nominated a Democratic candidate for Governor in the last primary election, *see* NMSA 1978, § 1-8-33(C) (2008), which for this election cycle required a minimum of 31 signatures from citizens registered and qualified to vote for the Division 4 judgeship. To be qualified to vote in the Democratic primary for the Division 4 judgeship, the voter must be a registered Democrat who resides in San Juan County precincts 5 through 7, 15, 16, 53, 57, 71, 79, 81, and 83 through 86. NMSA 1978, § 35-1-27(B)(4) (2007).

**{4}** Plaintiffs filed a complaint in district court on March 22, 2010, pursuant to Rule 1-096 challenging the sufficiency and validity of Johnson's nominating petitions. Plaintiffs' complaint asserted a two-pronged challenge to Johnson's nominating petitions. Plaintiffs first challenged the legal sufficiency of 151 of the 166 signatures on the nominating petitions. The complaint separated the challenged signatures into four separate groups,

alleging that the signatures in each respective group were invalid because the individuals (1) were registered Republicans, (2) were not registered to vote, (3) were registered in another magistrate district, or (4) were not listed as Democrats or Republicans. In several instances, a particular signature was included in more than one of the four groups, and it was challenged on multiple grounds. Although the complaint represented that the challenge to the signatures was based on a diligent search of all Democratic party voter registration records in San Juan County that was conducted from March 15, 2010 through March 19, 2010, the complaint did not indicate who conducted the search of the voter registration records.

**{5}** Plaintiffs then focused on the lack of a statement in the nominating petitions indicating that Johnson was seeking the Division 4 magistrate judge position. The complaint sought to invalidate the nominating petitions as a whole, irrespective of the validity of the individual signatures, contending that nominating petitions must state the specific office, including division, the candidate is seeking.

**{6}** Although by rule and statute a hearing and decision on a complaint challenging nominating petitions must occur within ten days of the filing of the complaint, *see* Rule 1-096(H); NMSA 1978, § 1-8-35(A) (1993), Plaintiffs did not file a request for an expedited hearing when they filed their complaint, nor did they obtain a setting within the ten-day time limit. Eleven days later, on April 2, 2010, all of the San Juan County district judges in the eleventh judicial district recused from the case, the matter was immediately reassigned to a McKinley County district judge in the eleventh judicial district, and the district court filed a notice of hearing. The notice of hearing scheduled the trial for six days later on April 8, 2010 at 1:30 p.m., which was well beyond the ten-day deadline for hearing and decision. The same day that the notice of hearing was filed, Johnson filed a pro se motion to dismiss Plaintiffs' complaint because (1) the ten-day deadline had expired, (2) Johnson alleged that he was not properly served with a copy of the complaint, and (3) the complaint did not correctly state Johnson's first name.

**{7}** On the day of trial, Johnson was not present when the hearing commenced. The district judge stated on the record that he would adjourn the hearing for ten minutes to see whether Johnson would appear. Eight minutes later the hearing reconvened, and the judge stated on the record that Johnson had called to notify the court that he would be twenty to thirty minutes late for the hearing. The judge stated that he would not wait for Johnson to arrive, proceeded to deny Johnson's motion to dismiss, and then asked Plaintiffs' counsel to present evidence in support of their complaint.

**{8}** Plaintiffs then called the San Juan County Clerk, who testified summarily that Johnson's nominating petitions only had eighteen valid signatures, which consisted of fifteen signatures that Plaintiffs had not challenged in their complaint and three signatures that Plaintiffs did challenge. Although the county clerk's testimony implicitly supported Plaintiffs' challenge to 148 of the 151 signatures attacked in the complaint, her testimony neither discussed each signature individually nor explained why she concluded that 148

3

signatures were invalid. Plaintiffs' counsel offered to go through each signature, but the court declined the offer and stated it would grant Plaintiffs' request for relief because (1) Johnson did not have a sufficient number of valid signatures, and (2) his nominating petitions did not designate the Division 4 magistrate judge position.

**{9}** At that point, the hearing concluded in Johnson's absence less than fifteen minutes after it began. A formal written order memorializing the court's decision was filed four days later, and Johnson appealed directly to this Court in accordance with Rule 12-603 NMRA.

**DISCUSSION**

**{10}** As noted above, because Johnson was late for the hearing, the district court denied his motion to dismiss Plaintiffs' complaint and proceeded to rule in favor of Plaintiffs through a summary proceeding, which lacked explicit testimony concerning the basis of Plaintiffs' 148 challenges, conducted in Johnson's absence. While Johnson's failure to appear on time for trial was indefensible, we must keep in mind that it was not just his interests that were at stake, but also the right of the citizens to nominate and vote for the candidate of their choice. *See Gunaji v. Macias*, 2001-NMSC-028, ¶ 26, 130 N.M. 734, 31 P.3d 1008 (recognizing "the basic right to vote for the candidate of one's choice" and acknowledging that an "omission of a candidate's name from the ballot has deprived some voters of that choice, thereby, strictly speaking, compromising the validity of the election"); *see also Williams v. Rhodes*, 393 U.S. 23, 31 (1968) (noting that laws restricting ballot access burden the right to cast one's vote effectively). Although the district court's displeasure with Johnson was understandable, the court exceeded the bounds of its discretion by summarily removing him from the ballot, ostensibly as a sanction for his tardiness. *Cf. Chase v. Contractors' Equip. & Supply Co.*, 100 N.M. 39, 44-45, 665 P.2d 301, 306-07 (Ct. App. 1983) (holding that the trial court abused its discretion in refusing to set aside default judgment because the trial attorney's tardiness constituted excusable neglect where the trial attorney overslept and was forty minutes late for trial).

**{11}** We do not take lightly the district court's discretion to manage its docket. However, challenges to nominating petitions are not favored, and every precaution must be taken to protect the right of New Mexico citizens to vote for the candidate of their choice. *See Simmons v. McDaniel*, 101 N.M. 260, 263, 680 P.2d 977, 980 (1984) (noting the Court's commitment "to examine most carefully, and rather unsympathetically any challenge to a voter's right to participate in an election") (internal quotation marks and citation omitted); *accord Ruiz v. Vigil-Giron*, 2008-NMSC-063, ¶ 5, 145 N.M. 280, 196 P.3d 1286. This case was not a situation where a litigant completely failed to appear without contacting the court. Johnson called the court because he had underestimated how long it would take for him to drive from his home on the Navajo Reservation to the district court, and he promised to appear in court within twenty to thirty minutes of the scheduled starting time. Despite his assurances, the hearing proceeded without him and ended within fifteen minutes. Johnson did, in fact, appear as represented but after the hearing had concluded.

**{12}** Because nominating petition challenges are filed shortly before ballots are printed and therefore must be handled expeditiously, we appreciate the district court's reluctance to indulge Johnson's failure to take steps to ensure his timely arrival. On the other hand, the hearing had already been scheduled well beyond the ten-day deadline set forth in both Rule 1-096 and the corresponding statute, Section 1-8-35. As such, we see no reason why the district court could not have waited an additional fifteen minutes so that Johnson could defend the contested signatures on his nominating petitions. *See Gunaji*, 2001-NMSC-028, ¶ 20 (recognizing that a candidate for public office has "standing to assert the rights of . . . voters whose votes were incorrectly tabulated").

**{13}** Having concluded that the district court should not have proceeded in Johnson's absence, we would ordinarily remand for a new hearing. However, at oral argument before this Court on Wednesday, April 21, 2010, the parties represented to this Court that the printing of the ballots needed to commence no later than the following Monday, April 26, if they were to be available in time for the June 1 primary election. Under these circumstances, there was not enough time to remand the matter to the district court for a new hearing followed by this Court's review, if necessary, before the April 26 deadline. Moreover, even if we had been inclined to remand for a new hearing, the summary approach used by Plaintiffs in pleading their case would have undermined Johnson's ability to prepare a defense and diminished the district court's ability to efficiently review all of the challenged signatures. As a result, we determined that the best approach was to give the voters the fullest opportunity possible to vote for the candidate of their choice to serve as the Division 4 magistrate judge for San Juan County. As a consequence of our ruling from the bench after oral argument, no further proceedings were needed in the district court. However, although they are not necessary to our resolution of this case, there are other aspects of the proceedings in district court that should be considered for those who must properly and expeditiously litigate and decide future actions challenging nominating petitions.

**{14}** As we noted at the outset, we recently amended Rule 1-096, which is the rule of civil procedure governing district court actions to challenge nominating petitions. In many respects, the revised rule remains the same as the prior version, and it continues to mirror the key statutory provisions enacted by the Legislature regarding challenges to nominating petitions. *See Albuquerque Rape Crisis Ctr. v. Blackmer*, 2005-NMSC-032, ¶ 5, 138 N.M. 398, 120 P.3d 820 (acknowledging the Legislature's role in enacting rules of procedure unless and until the Supreme Court exercises its inherent power to supersede such statutory provisions with rules adopted by the Court); *see also Lovelace Med. Ctr. v. Mendez*, 111 N.M. 336, 339, 805 P.2d 603, 606 (1991) (discussing the "coordinate rulemaking power shared by the legislature and the judiciary"). Most importantly, both our rule and the corresponding statute continue to require that the district court hold a hearing and make a decision within ten days of the filing of the complaint challenging nominating petitions. *Compare* Rule 1-096(H), *with* Section 1-8-35(A).

**{15}** Despite the ten-day deadline, the summary hearing in this case was not held within that time limit, nor was a decision reached. Given our disposition, we do not address

5

Johnson's argument that the failure to hold a hearing and reach a decision within the ten-day deadline deprived the district court of the authority to act. Nonetheless, as the circumstances of this case illustrate, the prompt disposition of this type of case is not only of the utmost importance, but it is also a practical necessity if accurate ballots are to be prepared in time for the primary election.

**{16}** We do not mean to suggest, however, that the district court was dilatory in its processing of this case. In fact, as soon as the case was reassigned to the McKinley County district court, a hearing was scheduled within six days. Although the case was not reassigned to the McKinley County District Court until eleven days after the complaint was filed, the delay preceding the reassignment of the case can be attributed to the manner in which Plaintiffs filed their action. In particular, at the time that Plaintiffs filed their complaint challenging Johnson's nominating petitions, there is no indication that they also filed a request for hearing. While Rule 1-096 does not explicitly require the plaintiff to file an immediate request for hearing, Paragraph B of the rule does state that "the plaintiff shall, immediately after filing the complaint, also deliver a copy of the complaint and notice of hearing to the candidate whose nominating petition is challenged." Implicit in this requirement is the need to obtain a hearing date, which could be accomplished by filing an immediate request for an expedited hearing along with the complaint. A plaintiff should not simply file a Rule 1-096 complaint as if it were an ordinary civil action and expect the district court to immediately recognize that an expedited hearing is required. We therefore take this opportunity to clarify that future complaints filed pursuant to Rule 1-096 should be accompanied by a request for an expedited hearing, and the matter should immediately be called to the attention of the judge assigned to the case.[1] Had Plaintiffs alerted the district court to the need for an expedited hearing, the San Juan County district judges would most likely have recused much sooner, thereby facilitating a faster reassignment and an earlier trial setting.

**{17}** Because time is of the essence in this type of proceeding, the plaintiff must also try to notify the affected candidate of the action challenging the candidate's nominating petitions as soon as possible. To that end, Rule 1-096 requires that the plaintiff give notice through two separate avenues. First, the plaintiff must serve the complaint on the candidate's statutory agent for service of process, which in this case was the county clerk. *See* Rule 1-096(B); *see also* NMSA 1978, § 1-8-25(B)(2) (1998); § 1-8-35(B). Second, Rule 1-096(B) requires that the plaintiff immediately deliver a copy of the complaint and notice of hearing directly to the candidate in accordance with Rule 1-004(F)(1)(a) NMRA.

**{18}** In this case, Plaintiffs failed to directly deliver the complaint and notice of hearing to Johnson. In an attempt to excuse this deficiency, Plaintiffs pointed out that they did serve the complaint on the county clerk, who then immediately mailed a copy of the complaint to

---

[1]We refer this matter to our Rules of Civil Procedure for the District Courts Committee to amend Rule 1-096 accordingly.

Johnson. Nevertheless, even immediate mailing by the county clerk could not have reached Johnson as quickly as direct delivery by Plaintiffs the day they filed their complaint.

**{19}** Plaintiffs seek to minimize this failing by suggesting that the address Johnson listed on his declaration of candidacy would have been inadequate for personal delivery. Although the address Johnson gave was a descriptive address of the type commonly used on the Navajo Reservation, rather than a street address, we are not persuaded by Plaintiffs' assertion that Johnson's address was inadequate to effect personal service. Moreover, Plaintiffs did not even attempt to locate Johnson using the directions he gave. In the absence of such an attempt, Plaintiffs' challenge to the adequacy of Johnson's address cannot be sustained. In addition, given the expedited nature of the proceeding, we cannot overstate the importance of Plaintiffs at least trying to give notice directly to Johnson as soon as possible so that he could have begun to prepare his defense in the extremely short time allotted to him.

**{20}** In addition to limiting the amount of time Johnson had to prepare his defense, Plaintiffs also undermined his ability to quickly investigate the merit of their challenges to his nominating petitions because Plaintiffs' complaint failed to state who conducted the searches of voter registration records that formed the basis for their complaint. *See* Rule 1-096(E)(3) (requiring complaints challenging nominating petitions to specify "the name and address of each person who searched the voter registration records upon which the challenge relies"). In the absence of that information, a candidate would lose some of his or her limited available time in determining who conducted the searches. Determining who conducted the searches would enable a candidate to contact that person so that the candidate could evaluate the completeness and accuracy of the search of the voter registration records.

**{21}** We also note one more deficiency in Plaintiffs' complaint that had no adverse consequences in this case, but warrants discussion for guidance in future cases. In particular, Rule 1-096(C)(1) requires that each signature challenged by the plaintiff be set forth in a separate count. If the signature is challenged on multiple grounds, each of those grounds must be set forth in the count for that signature. *See* Rule 1-096(C)(2). The purpose of this very specific requirement is to enable the candidate to quickly assess the scope of the plaintiff's challenges and to facilitate efficient review of each challenged signature at the time of trial. By requiring that all challenges to a specific signature be set forth in a single count, both the court and the parties can use the complaint as a guide to ensure that all witnesses relevant to a contested signature can be called at one time so that the court can definitively resolve its validity before moving on to the next challenged signature.

**{22}** In this case, Plaintiffs grouped multiple signatures into a single count based on a specific type of challenge. For example, one group of signatures was challenged because the signers were registered as Republicans rather than Democrats. Another group of signatures was challenged because the signers did not reside in magistrate Division 4. This approach may be adequate if the multiple signatures were only being challenged for a single,

7

specific reason.[2] However, in several instances, signatures from one group were repeated in another group. Given the number of signatures at issue and the lack of specificity, it was not immediately apparent when a particular signature was challenged on multiple grounds. Had the district court required individual proof for each challenged signature in each group, the court might have inadvertently duplicated its efforts by upholding the validity of a signature on one ground, only to need to reexamine its validity if it was challenged on another ground. While challenging a signature in multiple counts does not preclude the court from resolving all challenges to a signature at one time during the hearing, the single-signature-per-count method required by the rule provides an efficient method for the court to review each challenged signature without unnecessary repetition. Because a relatively small number of signatures were at issue in this case, it did not matter that the court did not require individualized proof for each challenged signature. However, when a complaint challenges thousands of signatures, setting forth all challenges to a particular signature in one count will enhance the court's ability to resolve all challenges as efficiently as possible within the very short time period allowed.[3]

**{23}** Finally, we address the district court's decision to invalidate all of Johnson's nominating petitions because he did not state that he was seeking the Division 4 magistrate judgeship. In the San Juan County magistrate district, the six magistrate judgeships are allocated to six discrete divisions defined by the geographic boundaries of specific precincts. Although each judge may reside anywhere in San Juan County and has district-wide jurisdiction, the voters for a particular magistrate judgeship must reside within the boundaries of the division for that particular judgeship. *See* § 35-1-27(B). Despite the fact that the division for a particular judgeship in San Juan County defines who is qualified to vote for that judgeship, Johnson's nominating petitions did not specify the division of the judgeship he sought. However, he apparently is not alone in this oversight.

**{24}** At oral argument, counsel appeared on behalf of the San Juan County Clerk and contended that historically many candidates for magistrate judge have failed to state the division on their nominating petitions. The same situation apparently holds true for legislative office candidates in San Juan County. While the county clerk has apparently harbored doubts about the validity of nominating petitions that do not state the division of the office being sought, the clerk has apparently never previously rejected petitions on that basis, and the clerk does not inform candidates that they are required to state on their nominating petitions the division of the office they seek.

**{25}** The form of the nominating petition is prescribed by NMSA 1978, Section 1-8-30(C)

---

[2]For example, a count could be titled "Signatures challenged only because the signatories are not registered to vote."

[3]We also refer this matter to our Rules of Civil Procedure for the District Courts Committee to amend Rule 1-096(C) accordingly.

8

(2001).  That statute requires each nominating petition to include the following introductory paragraph:

> I, the undersigned, a registered voter of the county of _____, New Mexico, and a member of the _____ party, hereby nominate _____, who resides at _____ in the county of _____, New Mexico, *for the party nomination for the office of* _____, to be voted for at the primary election to be held on the first Tuesday of June, 20___, and I declare that I am a resident of the state, district, county or area to be represented by the office for which the person being nominated is a candidate.  I also declare that I have not signed, and will not sign, any nominating petition for more persons than the number of candidates necessary to fill such office at the next ensuing general election.

*Id.* (emphasis added).  Although the statutorily-required language emphasized above leaves a blank for the candidate to fill in the name of the office sought, it does not specifically indicate whether the division number should be included.  However, the foregoing language also requires a declaration that the person signing the petition is "a resident of the state, district, county or area to be represented by the office for which the person being nominated is a candidate." *Id.*

**{26}**    Given that only those persons residing within the particular magistrate judgeship division may nominate a candidate for that office, we conclude that the Legislature intended that the nominating petition state the division number associated with the magistrate judgeship position that is up for election. *See generally Key v. Chrysler Motors Corp.*, 121 N.M. 764, 768-69, 918 P.2d 350, 354-55 (1996) ("In interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background.").   If the identity of the division had no bearing on whether those asked to sign the petition are in fact qualified to sign it, failure to state the division would not be as troublesome.  However, because the petition must state the candidate's party affiliation and the county of the office in question so that those asked to sign the petition know whether they are qualified to do so, the petition must also state the division of the judgeship.  Given the traditional practice in San Juan County, and given that apparently no candidate's petition to date has been rejected by the San Juan County Clerk on this basis, it would have been patently unfair to hold Johnson to a requirement that has not yet been applied to anyone else.  In the future, all nominating petitions for magistrate judgeships in San Juan County should include the division number of the judgeship sought.

**CONCLUSION**

**{27}**    For the foregoing reasons, we ordered that Johnson's name be included on the Democratic primary ballot for the Division 4 magistrate judge position in San Juan County.

9

Anyone contemplating a challenge to the nominating petitions of a future candidate for office would be well advised to carefully follow the requirements of Rule 1-096. In the absence of strict adherence to the rule's requirements, courts should not look favorably upon attempts to remove a candidate from the ballot. *See* Rule 1-096(F) (providing that objections to nominating petition signatures are conclusively waived if not pled in accordance with the rule). Courts should continue to act in furtherance of the right of our citizens to nominate and vote for the candidates of their choice.

{28}    **IT IS SO ORDERED.**

 

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for *Charley v. Johnson*, Docket No. 32,337**

| **CP** | **CIVIL PROCEDURE** |
|--------|---------------------|
| CP-FA | Failure to Appear |
| CP-DJ | Default Judgment |
| CP-PL | Pleadings |
| CP-RC | Rules, Construction of Civil Procedure |
| CP-TL | Time Limitations |
| CP-SP | Service of Process |

| **CR** | **CIVIL RIGHTS** |
|--------|------------------|
| CR-VR | Voting Rights |

| **CT** | **CONSTITUTIONAL RIGHTS** |
|--------|---------------------------|
| CT-RV | Right to Vote |

| **EE** | **ELECTIONS** |
|--------|---------------|

**GV**                  **GOVERNMENT**
GV-EL            Elections


**JG**                   **JUDGES**
JG-AD           Abuse of Discretion