# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2020-NMSC-012

Filing Date: July 14, 2020

No. S-1-SC-38173

ANASTACIA GOLDEN MORPER,
CHUCK HASFORD, PAM HASFORD,
LLOYD PETERSON, and DIANE PETERSON,

      Petitioners-Appellants,

v.

MAGGIE TOULOUSE OLIVER,
in her capacity as the Secretary of State,

      Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Bryan Biedscheid, District Judge**

Released for Publication September 8, 2020.

SaucedoChavez, P.C.
Christopher T. Saucedo
Albuquerque, NM

for Petitioners

New Mexico Office of the Secretary of State
Tonya Noonan Herring
Santa Fe, NM

for Respondent

## OPINION

**THOMSON, Justice.**

**{1}** Anastacia Golden Morper sought preprimary designation as a candidate for the office of United States Representative from New Mexico's Third Congressional District at the 2020 Republican Party Pre-Primary Convention. Under the New Mexico Election Code, NMSA 1978, §§ 1-1-1 to 1-26-6 (1969, amended through 2019), a candidate

seeking "preprimary convention designation shall file nominating petitions at the time of filing declarations of candidacy" with the Secretary of State (Secretary). NMSA 1978, § 1-8-33(B) (2008). For congressional candidates, those nominating petitions must contain a minimum number of signatures "equal to at least two percent of the total vote of the candidate's party in the . . . congressional district" or "seventy-seven voters," whichever is greater. *Id.* Morper filed forty-nine nominating petitions, along with her declaration of candidacy. To be certified as a candidate, Morper was required to obtain at least 463 valid signatures. The Secretary is obligated to "certify . . . candidates for office of United States representative . . . who have filed their declarations of candidacy by convention designation and have otherwise complied with the requirements of the Primary Elections Law." NMSA 1978, § 1-8-39.1(A) (1993). In this case, the Secretary invalidated forty-four of Morper's nominating petitions because those petitions omitted the heading "2020 PRIMARY NOMINATING PETITION," which the Secretary deemed to be critical information required by law. By extension, the Secretary invalidated the signatures on those forty-four nominating petitions. In doing so, the Secretary invalidated over seven hundred signatures, leaving only forty-three signatures on the five nominating petitions the Secretary did not invalidate. The Secretary informed Morper that she had not received the "minimum number of signatures required" to be "qualified as a candidate" for the preprimary convention. Morper appealed the Secretary's decision to the district court. The district court upheld the Secretary's decision concluding that "the Secretary of State has the right to reject . . . nominating petitions that were not on the form prescribed by law." Morper appealed to this Court consistent with NMSA 1978, Section 1-8-26(E) (2019).

**{2}**     This case requires us to construe the sections of the Election Code that govern the form of nominating petitions. In addition, we must construe the limits on the Secretary's discretion to invalidate nomination petitions that are not in the exact form published by her office. *See* NMSA 1978, § 1-1-7.2 (2019) ("Petitions; nominations; signatures to be counted"); NMSA 1978, § 1-1-26 (2019) ("Petitions; nominations; requirements before signed by voters; invalidated petitions"); NMSA 1978, § 1-8-30 (2011) ("Primary Election Law; declaration of candidacy; nominating petition; filing and form"); NMSA 1978, § 1-2-1(C) (2017) ("Secretary of state; chief election officer; rules").

**{3}**     After reviewing the pleadings, we issued an order reversing the judgment of the district court and ordering the district court to vacate its order and direct the Secretary to certify Morper's candidacy. We issue this written opinion to provide guidance on the Secretary's authority to prescribe and require a particular form to be used for nominating petitions.

## I.     BACKGROUND

**{4}**     As required by law, in October 2019, the Secretary posted a sample nominating petition form (Secretary's Form) on the Secretary's website and published the Secretary's Form in the 2020 Primary Election Candidate Guide (Election Guide). *See* § 1-8-30(D) ("In October of odd-numbered years, the secretary of state shall post on the secretary of state's web site and shall furnish to each county clerk a sample of a

nominating petition form, a copy of which shall be made available by the county clerk upon request of any candidate.").

**{5}** The Legislature has provided the statutory nominating petition form (Legislature's Form). Section 1-8-30(C). The Secretary's Form differs from the Legislature's Form in that it adds "2020 PRIMARY" to the heading "NOMINATING PETITION," adds the version number "***Rev. 2019 NMSA 1978, § 1-8-30***" at the bottom of the page, and provides the date of "June 2, 2020," in the otherwise-blank, underlined space intended for the date of the primary election to which the petitions apply.

**{6}** Only five of the forty-nine nominating petitions Morper filed with her declaration of candidacy included the heading from the Secretary's Form. Morper does not dispute that forty-four nominating petitions omitted the heading "2020 PRIMARY NOMINATING PETITION." Those forty-four nominating petitions did not appear to deviate from the Secretary's Form in any other respect.

**{7}** The Secretary determined that those forty-four petitions were invalid because they lacked the proper heading, and therefore the Secretary did not count any of the signatures on those petitions. The Secretary informed Morper that she "did not qualify as a candidate" because Morper failed to submit "the minimum number of signatures required."

**{8}** Morper challenged the Secretary's decision by filing a petition in district court. *See* § 1-8-26(E) ("If a person is notified . . . that the person is not qualified to be a candidate, the person may challenge that decision by filing a petition with the district court.") Four individuals who signed a nominating petition for Morper joined as petitioners in her challenge in the district court and argued that the Secretary's determination denied them the right to exercise their "First Amendment petition rights."

**{9}** Petitioners argued that the Secretary was not authorized to invalidate Morper's nominating petitions and by extension the signatures thereon simply because the petition did not include the heading "2020 PRIMARY NOMINATING PETITION." Petitioners asserted that Section 1-8-30 prescribes the form of the nominating petition, which does not contain the heading on the Secretary's Form. Petitioners maintained that Morper's nominating petitions conformed to Section 1-8-30(C) and therefore that the signatures on the forty-four invalidated petitions should have been counted. The validity of the signatures was not contested in the district court, and therefore we presume the signatures on the forty-four petitions at issue were valid. *See* § 1-1-7.2 (C), (D) ("A signature shall be counted on a nominating petition unless there is evidence presented" that invalidates the signature).

**{10}** The Secretary responded by asserting that she is "bound by the Legislature's express mandate as to the form of the nominating petition." The Secretary further argued that she is granted the authority to prescribe the form of the nominating petition pursuant to her authority to approve the "forms [and] procedures" to "be used in any election." *See* § 1-2-1(C). At the hearing before the district court, the Secretary's Bureau

of Elections Director (Elections Director) asserted that the Secretary would not accept any nominating petition that deviated in any way from the Secretary's Form because the Secretary was "charged with prescribing the form." When questioned about why the heading "2020 PRIMARY NOMINATING PETITION" was critical, the Elections Director stated that it was the

> only mechanism that we have to ensure that the voters have all of the information that they need and that they have an awareness of what they are signing, and it is also the only way that we can ensure that candidates are not circulating these petitions ahead of the statutory time frame they are allowed to.

The Elections Director maintained that the heading ensured that candidates did not start collecting signatures prior to October 1, 2019. This date is critical because it guarantees that the Election Code is consistently applied and that no candidate had an "unfair advantage." The Secretary maintains that the form prescribed by law is the Secretary's Form, not the form prescribed by Section 1-8-30(C), and that the Secretary has no discretion to accept a nominating petition that deviates in any way from the Secretary's Form.

**{11}** The district court determined that the Secretary "has the authority to promulgate the 'form prescribed by law' pursuant to Section 1-2-1(C) which states: 'No form or procedures shall be used in any election held pursuant to the Election Code without prior approval of the secretary of state.'" Subsequently, the district court determined that the Secretary "has the right to reject and properly rejected the 44 nominating petitions that were not on the form prescribed by law." For the reasons that follow, we reverse.

## II.    ANALYSIS

### A.    Statutory Construction and the Standard of Review

**{12}** In reviewing the district court order, we must determine requirements on the form of nominating petitions under the Election Code and limits on the Secretary's statutory authority to approve forms and procedures used in elections——both issues of statutory construction that we review de novo. *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n,* 2009-NMSC-013, ¶¶ 5-7, 146 N.M. 24, 206 P.3d 135*.*

**{13}** We have long held that, although "[w]e will not construe election laws so liberally as to allow a candidate to receive a ballot position to which [s]he is not entitled, . . . we are also committed to examine most carefully[] and rather unsympathetically any challenge to a voter's right to participate in an election." *Simmons v. McDaniel,* 1984-NMSC-049, ¶ 15, 101 N.M. 260, 680 P.2d 977(internal quotation marks and citation omitted). The voter's right to participate includes the nominating process, and "every precaution must be taken to protect the right of New Mexico citizens to vote for the candidate of their choice." *Charley v. Johnson,* 2010-NMSC-024, ¶¶ 10-11, 148 N.M. 246, 233 P.3d 775 (per curiam).

**{14}**     The Secretary must ensure that the nominating process takes place in accordance with the laws enacted by the Legislature. However, the Secretary cannot impose greater requirements on the process than those imposed by the Legislature. *See, e.g.*, *Unite N.M. v. Oliver*, 2019-NMSC-009, ¶¶ 42, 45, 438 P.3d 343 (holding that the Legislature did not authorize the Secretary to institute a "straight-ticket" option when it authorized the Secretary to prescribe the "form of the ballot"). We do not suggest that the Secretary's goal of consistency and minimizing any unfair advantage is unreasonable; regardless, we must determine whether the mechanism the Secretary used in this instance was based on authority granted by the Legislature.[1]

**B.     The Secretary May Not Reject an Otherwise-Valid Nominating Petition Solely Based on Omission from the Heading of a Term Not Required by Statute**

**{15}**     "The form of the nominating petition is prescribed by [statute]." *Charley*, 2010-NMSC-024, ¶ 25. Section 1-8-30(C) provides:

> The nominating petition shall be on paper approximately eight and one-half inches wide and eleven inches long with numbered lines for signatures spaced approximately three-eighths of an inch apart and shall be in the following form:

NOMINATING PETITION

> I, the undersigned, a registered voter of New Mexico, and a member of the _____ party, hereby nominate _____, who resides at _____ in the county of _____, New Mexico, for the party nomination for the office of _____, to be voted for at the primary election to be held on _____, and I declare that I am a registered voter of the state, district, county or area to be represented by the office for which the person being nominated is a candidate. I also declare that I have not signed, and will not sign, any nominating petition for more persons than the number of candidates necessary to fill such office at the next ensuing general election.

| 1. | _____ | _____ | _____ | _____ |
|---|---|---|---|---|
| | (usual signature) | (name printed as registered) | (address as registered) | (city or zip code) |
| 2. | _____ | _____ | _____ | _____ |
| | (usual signature) | (name printed as registered) | (address as registered) | (city or zip code) |

---

[1]Because our construction of the Election Code is dispositive, we do not reach the constitutional argument concerning the First Amendment, which was advanced by four individual nominees. *See Allen v. LeMaster*, 2012-NMSC-001, ¶ 28, 267 P.3d 806 ("It is an enduring principle of constitutional jurisprudence that courts will avoid deciding constitutional questions unless required to do so." (internal quotation marks and citation omitted)).

(internal quotation marks omitted).

**{16}**  It is crucial to note that the content of the legislative form described above incorporates all the information about the candidate that the Legislature specifies, "shall be listed in the appropriate space at the top of a nominating petition before the petition has been signed by a voter[.]" Section 1-1-26(A). Specifically, Section 1-1-26(A) requires that a nominating petition list

> (1)    the candidate's name as it appears on the candidate's certificate of registration;

> (2)    the address where the candidate resides;

> (3)    the office sought by the candidate;

> (4)    if the office sought is a districted office . . . the district . . . of the office sought; . . . and

> (6)    if the office sought will be nominated at a political party primary, the party affiliation of voters permitted to sign the petition.

**{17}**  While Subsection A enumerates the information that is required on the form, Subsection B advises of the consequences of failing to provide that information:

> With or without a showing of fraud or a reasonable opportunity for fraud, a nominating petition page, including all signatures on the petition page, shall be invalid if any of the information required by Subsection A of this section is not listed on the petition before the petition page is signed by a voter or if any of the required information is subsequently changed in any way.

Section 1-1-26(B). Significantly, Subsection A does not include a heading or specify the text "2020 PRIMARY NOMINATING PETITION" among the requirements for the petition page. Thus, Subsection B does not invalidate a petition that does not contain such information. Nonetheless, the Secretary determined that she would not accept any nominating petitions that did not have the heading "2020 PRIMARY NOMINATING PETITION." We conclude that this was improper.

**{18}**  We agree with the Secretary's contention that the Legislature obligated the Secretary to publish "a *sample* of a nominating petition form" in "October of odd-numbered years[.]" Section 1-8-30(D) (emphasis added). And the Legislature granted the Secretary the authority to approve "forms [and] procedures" for elections. *See* § 1-2-1(C) ("No forms or procedures shall be used in any election held pursuant to the Election Code without prior approval of the secretary of state."). Publishing an approved sample nominating petition form makes common sense, provides a measure of

uniformity, and relieves the potential administrative burden of approving disparate, individual forms created and submitted by multiple potential candidates.

**{19}** Fulfilling her duty under Section 1-8-30(D) and exercising her authority under Section 1-2-1(C), the Secretary posted on her website and published in the Election Guide an approved sample nominating petition form in October 2019. The Secretary's Form contains all the required information enumerated in Section 1-1-26(A) and prescribed by Section 1-8-30(C). Although Section 1-2-1(B)(1) obligates the Secretary to "obtain and maintain uniformity in the application, operation and interpretation of the Election Code," we are concerned that the Secretary's determination in this case, although done in pursuit of the laudable goal of uniformity, elevates uniformity over "protect[ing] the right of New Mexico citizens to vote for the candidate of their choice." *Charley*, 2010-NMSC-024, ¶ 11.

**{20}** The consideration crucial to determining whether a nominating petition is invalid under the Election Code is whether a voter was apprised of all the information required by Section 1-1-26(A) prior to signing the petition. *See* § 1-1-26(B) (providing that "if any of the information required by Subsection A of this section is not listed on the petition before the petition page is signed by a voter or if any of the required information is subsequently changed in any way[,]" the petition is invalid). The Secretary did not dispute that every nominating petition that Morper filed contained all of the information required by Section 1-1-26(A) prior to the time the voters signed the petitions. And although the Elections Director expressed concern that the voters needed to be informed and aware of what they were signing, that concern was adequately addressed because all of Morper's petitions, including the forty-four invalidated petitions, contained the introductory paragraph prescribed in Section 1-8-30(C).

**{21}** The Elections Director asserted that requiring the additional information in the heading "2020 PRIMARY NOMINATING PETITION" is necessary because "it is . . . the only way that we can ensure that candidates are not circulating these petitions ahead of the statutory time frame." The Secretary argues on appeal that this requirement is crucial because it guarantees the consistent application of the Election Code and prevents some candidates from otherwise obtaining an "unfair advantage" by "gathering petition signatures in advance of the statutory mandated date, which is October 1, 2019." Assuming that the mandated date is a requirement supported by statute, the requirement was met in the instance of the Morper petitions.[2]

---

2The Secretary argues that it is statutorily prohibited for a candidate to gather petition signatures prior to October 1 of the year proceeding an election. Our review of the Election Code did not confirm such a mandate. Ostensibly, the Secretary derived this statutory mandate from combining her authority to approve forms and procedures under Section 1-2-1(C) and her obligation under Section 1-8-30(D) to publish a sample nominating petition in October, justifying its creation as a mechanism to ensure "uniformity in the application [and] operation . . . of the Election Code." *See* § 1-2-1(B)(1). Whether there is a statutorily mandated date is not an issue in this case. Therefore, we do not address it or whether the Legislature has properly delegated authority to the Secretary to promulgate a regulation concerning a date prior to which nominating petitions may not be circulated. However, we note that the Legislature, not the Secretary, has "plenary authority over elections." *Unite N.M.*, 2019-NMSC-009, ¶ 6.

**{22}** Again, except for the omission of the heading in some petitions, all of Morper's nominating petitions are identical in substance and form to both Section 1-8-30(C) and the Secretary's Form. All of Morper's petitions contain two pieces of information to assure the filing officer that the form Morper used was the one the Secretary published in October 2019 and thus that the petitions, including the invalidated petitions, were not circulated in advance. First, the Secretary's Form is fillable, meaning that the candidate must insert the required information into the underlined, blank spaces. Significantly, the Secretary's Form inserts the date "June 2, 2020," as the date of the primary election. In this way, the Secretary's Form does not allow a candidate to alter the date of the applicable primary election, and all of the nominating petitions that Morper filed are identical to the Secretary's Form in this respect.

**{23}** Second, it is also significant that the Secretary's Form includes the version number "***Rev. 2019 NMSA 1978, § 1-8-30***" in the lower left corner under the last signature line. All of the nominating petitions that Morper filed are identical to the Secretary's Form in this respect. This version number indicates that the Secretary's Form was revised in 2019 (a year in which there was no general election), immediately preceding the election at issue, the 2020 election. Thus, even without the heading "2020 PRIMARY NOMINATING PETITION," the nominating petitions filed by Morper contain assurances that she did not obtain an unfair advantage by collecting nominating signatures early.

**{24}** Although the forty-four invalidated nominating petitions omit the heading, the substance of the invalidated nominating petitions conforms with the form prescribed by Section 1-8-30(C) and therefore meets the requirements of the Election Code. *See* § 1-1-7.2(C) ("A signature shall be counted on a nominating petition unless there is evidence presented that the petition does not provide the information required by the nominating petition for each person signing."); *see also* § 1-1-26(A) ("The following information shall be listed in the appropriate space at the top of a nominating petition before the petition has been signed by a voter: . . . ."); NMSA 1978, § 1-8-32(B) (1979) (establishing that it is a misdemeanor to "knowingly circulate, present or offer to present for the signature of another person a nominating petition that does not clearly show on the face of the petition" the information required by Section 1-1-26(A)(1)-(3)). Considering what is at stake, the omission of the heading should not be fatal to the candidate's nomination when, as here, the petition has given the voters signing the petition all the statutorily-required information.

**{25}** We appreciate that the reviewing official at the Secretary's office may have been required to give the nominating petitions that Morper filed more than a cursory glance to ascertain that the petitions were in the form that Section 1-8-30(C) prescribes, contained the information that Section 1-1-26(A) requires, and were identical to the Secretary's Form except for the omitted heading. However, this additional attention does not justify the Secretary's argument that allowing her to invalidate any form that omitted the heading that she approved—regardless of whether the remainder of the form is identical to the Secretary's Form—protects the integrity and fairness of the elective franchise.

**{26}** "States certainly have an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing public officials." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364 (1997). Notwithstanding this interest, the Secretary's determination invalidated the nominating petitions in this case and thereby prevented the counting of ostensibly more than seven hundred signatures of New Mexico citizens, each signature representing a valid nomination of a candidate for elective office. We must analyze the Secretary's action with a skeptical eye in order "to protect the right of New Mexico citizens to vote for the candidate of their choice." *Charley*, 2010-NMSC-024, ¶ 11. Considering the relevant portions of the Election Code, we conclude that the Legislature did not delegate the power to invalidate nominating petitions that conform with Section 1-8-30(C) when it empowered the Secretary to approve the forms and procedures for elections.

## III. CONCLUSION

**{27}** For the foregoing reasons, we conclude that Morper's name be included on the Republican primary ballot for the office of United States Representative from New Mexico's Third Congressional District.

**{28}    IT IS SO ORDERED.**

**DAVID K. THOMSON, Justice**

**WE CONCUR:**

**JUDITH K. NAKAMURA, Chief Justice**

**BARBARA J. VIGIL, Justice**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**